UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHANNON S.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

23-CV-781-LJV
DECISION & ORDER

On August 3, 2023, the plaintiff, Shannon S. ("Shannon"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On November 2, 2023, Shannon moved for judgment on the pleadings, Docket Item 6; on January 25, 2024, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on February 8, 2024, Shannon replied, Docket Item 13.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Shannon applied for Disability Insurance Benefits ("DIB"), which includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37–38 (2d Cir. 1989).

For the reasons that follow, this Court denies Shannon's motion and grants the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.     THE ALJ'S DECISION

On January 13, 2022, the ALJ found that Shannon had not been under a disability since November 12, 2018.  *See* Docket Item 5 at 33.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.* at 21–22.

At step one, the ALJ found that Shannon had not engaged in substantial gainful activity since November 12, 2018, her alleged onset date.  *Id.* at 23.  At step two, the ALJ found that Shannon suffered from eight severe, medically determinable impairments: "asthma, chronic obstructive pulmonary disease, left shoulder tendinitis, left carpal tunnel syndrome, history of left ankle sprain, complex regional pain syndrome (left upper extremity), history of herniated cervical disc, and obesity."  *Id.*

At step three, the ALJ found that Shannon's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 25.  More specifically, the ALJ found that Shannon's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of nerve roots), 1.18 (abnormality of a

3

major joint in any extremity), 3.02 (chronic respiratory disorders), or 3.03 (asthma).  *Id.* at 25.  And in assessing Shannon's mental impairments, the ALJ found that Shannon was: (1) not impaired in understanding, remembering, or applying information; (2) mildly impaired in interacting with others; (3) not impaired in concentrating, persisting, or maintaining pace; and (4) not impaired in adapting or managing herself.  *Id.*

The ALJ then found that Shannon had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §] 404.1567(b)" except that:

> [Shannon] should not climb ladders[,] ropes[,] and scaffolds.  [She] can frequently extend, flex[,] and rotate her cervical spine.  [Shannon] is right hand dominant, and she can occasionally reach with her non dominant left arm.  [A]nd [she] can occasionally handle and finger.  [Shannon] should not have concentrated exposure to respiratory irritants such as dust, odors, fumes and gases, wetness, extreme hot and cold temperatures[,] and humidity.

*Id.* at 26.

At step four, the ALJ found that Shannon no longer could perform any past relevant work.  *Id.* at 31.  But given Shannon's age, education, and RFC, the ALJ found at step five that Shannon could perform substantial gainful activity as a furniture rental clerk, school bus monitor, or usher.  *Id.* at 32; *see Dictionary of Occupational Titles* 295.357-018, 1991 WL 672589 (Jan. 1, 2016); *id.* at 372.667-042, 1991 WL 673102 (Jan. 1, 2016); *id.* at 344.677-014, 1991 WL 672865 (Jan. 1, 2016).  The ALJ therefore found that Shannon had not been under a disability from November 12, 2018, through January 13, 2022, the date of the decision.  *See* Docket Item 5 at 33.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II.  ALLEGATIONS

Shannon argues that the ALJ improperly assessed the opinion of Lauren Marino, PA-C.  Docket Item 6-1 at 8.  More specifically, Shannon argues that the ALJ "did not properly explain the supportability or consistency factors, and [that the] lack of analysis left the [ALJ's] decision not supported by substantial evidence."  *Id.*  For the reasons that follow, this Court disagrees.

## III.  ANALYSIS

For claims filed on or after March 27, 2017, such as Shannon's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [a claimant's] medical sources."  *Angela H.-M. v. Comm'r of Soc. Sec.* 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (quoting 20 C.F.R. § 404.1520c(a), 416.920c(a)) (internal quotation marks omitted).  Instead, an ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [she] finds the medical opinions in the case record."  *Id.*

The Code of Federal Regulations lists five factors for an ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  The ALJ is required to "explain how [she] considered the supportability and consistency factors" because they are "the most important factors,"

and she "may, but [is] not required to, explain how [she] considered the [remaining] factors. *Id.* § 404.1520c(b)(2).

With respect to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative finding will be." *Id.* § 404.1520c(c)(2). In other words, supportability addresses how well the source explains and provides evidence for his or her opinion, and consistency addresses whether the opinion fits with the rest of the medical record.

On November 30, 2021, PA Marino completed a "physical treating medical source statement" and opined, among other things, that Shannon could sit and stand for at least six hours of an eight-hour workday with brief periods of walking every 90 minutes. Docket Item 5 at 1076, 1078 (capitalization omitted). Along the same lines, PA Marino opined that Shannon could lift and carry up to 50 pounds rarely, 20 pounds occasionally, and 10 pounds frequently. *Id.* at 1076. And PA Marino concluded that Shannon's symptoms would occasionally "interfere with attention and concentration" and cause her to miss "[a]bout two days per month." *Id.* at 1075, 1077.

The ALJ found PA Marino's opinion to be partially persuasive. *Id.* at 31. In doing so, the ALJ first considered the opinion's consistency with the rest of the record. The

ALJ noted that PA Marino's "exertional and postural limitations [were] generally consistent with other medical opinions." *Id.*  And the ALJ credited those limitations in finding Shannon capable of performing only light work.  *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").  But the ALJ concluded that PA Marino's "assessment[s] regarding [time] off task and absences [were] not supported by either [Shannon's] primary care records[] or by the record as a whole."  Docket Item 5 at 31 (citing *id.* at 811–913, 1024–71); *see Spottswood v. Kijakazi*, 2024 WL 89635, at *2 (2d Cir. Jan. 9, 2024) (describing "consistency" as "how consistent an opinion is with other evidence in the record").

      The ALJ also addressed supportability, explaining that "PA Marino provid[ed] minimal explanation for her opinion" and that "the assessment for [time] off task and absences is unsupported."  Docket Item 5 at 31.  In fact, PA Marino provided no explanation for her opinion that Shannon would occasionally have difficulty concentrating and would be absent two days per month.  *See id.* at 1074–78.  Likewise, those limitations find no support in either PA Marino's accompanying treatment notes, *id.* at 1033–41, or the notes and opinions of any other provider of record.  *See, e.g.*, *id.* at 811–913.  So the ALJ did what was required of her, concluding that PA Marino's off-task and absence findings were unsupported, inconsistent, and therefore not persuasive.  *Id.* at 31.

      Shannon correctly argues that the ALJ was required to address the "weight of the evidence" in assessing the persuasiveness of PA Marino's opinion.  Docket Item 6-1 at 10 (quoting *Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022)).  But

7

the ALJ did just that, considering PA Marino's opinion in light of all the other evidence in the record.

For example, the ALJ reviewed the consultative examination performed by Harbinder Toor, M.D., on May 18, 2021, concluding that it supported the need for "minimal limitations for standing, walking, lifting, carrying, and performing postural activities, with some limitations for cervical range of motion and some limitations for handling and fingering." Docket Item 5 at 29 (citing *id*. at 915-18). The ALJ similarly considered Shannon's reported activities of daily living—such as bathing, cooking, cleaning, shopping, and driving—and found that those activities supported "a greater functional ability than [Shannon] alleged." *Id.* at 29–30; *see Rusin v. Berryhill*, 726 F. App'x 837, 840–41 (2d Cir. 2018) (summary order) (illustrating how an ALJ may consider inconsistencies between a claimant's allegations and her activities of daily living).

What is more, opinion evidence other than PA Marino's supported the RFC determination as well. Dr. Toor's opinion, for example, included mild to moderate manipulative and postural limitations, as well as asthma-related limitations*, see* Docket Item 5 at 30 (citing *id.* at 914–18), each of which the ALJ incorporated in the RFC, *id.* at 26. The opinions of Azmat Saeed, M.D., and Douglas Chen, M.D., both state agency medical consultants, found similar limitations*, id.* at 30 (citing *id.* at 511–25, 527–43) ("[Shannon] can lift or carry 10 [pounds] frequently and 20 [pounds] occasionally, can stand/[]walk for 6 hours, and sit for 6 hours in an 8-hour workday."), and the ALJ included those limitations in the RFC as well, *id.* at 26.

In sum, the ALJ appropriately reviewed the supportability and consistency of PA Marino's opinion in light of PA Marino's own records and the other evidence in the record. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A]n [ALJ] is free to . . . chose between properly submitted medical opinions"). And while Shannon may disagree with the weight the ALJ assigned to each opinion and medical record, it is not the function of this Court to re-weigh evidence or determine *de novo* whether Shannon is disabled. *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence. This Court will not second guess it.

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Shannon's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 12, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:   December 8, 2025
         Buffalo, New York

                                            */s/ Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE